May it please the Court, my name is Curtis Pierce and I represent the petitioner Yongji Quan. This is the second time the petitioner has a case before the United Circuit Court of Appeals. The first case resulted in a decision in 2005, which frankly requires some mental gymnastics to process, in my opinion. On the one hand, the Court held that an adverse credibility determination does not necessarily preclude a finding for relief pursuant to the Convention Against Torture. So although this Court upheld the adverse credibility finding, it also remanded the case for determination of petitioner's claim pursuant to the Convention Against Torture. And I think this caused some confusion. The immigration judge, the second immigration judge, Judge Stancil, assumed that this adverse credibility finding also encompassed a finding that the petitioner was not even a bona fide Falun Gong practitioner. And one of the points that I raised, and I think is trying not to be asked, is what is the purpose then of this Court having remanded the case for consideration of country conditions if the petitioner is not even a bona fide Falun Gong practitioner? Well, isn't that the point? If he doesn't meet that burden of proof, you don't get to the second point, right? Well, according to the jurisprudence, which is, again, I think requires some mental gymnastics for lack of a better term, asylum requires the applicant to show well-founded fear of persecution, and he needs to show that he's credible. Nevertheless, because of the way the regulations are written for Convention Against Torture, in which many factors can be considered, including country conditions, this Court has ruled that an adverse credibility finding determination with respect to asylum is not necessarily a death knell with regard to a cat claim. Well, that wasn't what happened here, was it? Well, in this case, again, I have the 2005 ruling in front of me. No, I'm not talking about that. What I'm talking about is the IGA did indicate that there was this previous ruling and that that was something to take into account, but independently considered the evidence that your client put on that he was a Falun Gong practitioner. And the evidence that was put on is pretty sketchy. A photograph from a long distance, his own testimony, a website that doesn't even mention his name. I mean, that's pretty flimsy stuff, isn't it? Yes, Your Honor, it is. But I'm going to point out that the second hearing was tainted. The judge on several occasions incorrectly stated that this Court had found that Petitioner was not a bona fide Falun Gong practitioner. This Court did not state that. I'll tell you exactly what this Court stated. The discrepancies regarding the police beating and other deprivations that allegedly occurred during Kwan's detention are substantial and bear a legitimate nexus to his claims of asylum and withholding. I mean, this raises another question. Adverse credibility determination. Where does it begin? Where does it end? Again, in immigration law, we also have what's known as a frivolous finding. They didn't make it, the judge didn't make a frivolous finding. You're obviously troubled by the reference to the previous determination. How do you deal with Lee versus Holder? Again, as I recall, that was a two-to-one decision. It doesn't matter. It's the ruling of our Court, right? It's a binding ruling of our Court, admittedly, in 2013. But doesn't that indicate that what occurred here is perfectly lawful under our jurisprudence? In terms of the I.J.'s acknowledging the previous determination by another I.J. that your client was not credible. Now, independently, the I.J. found these additional points that I.J. felt were not credible. But the fact that mention was made of the previous determination under Lee is perfectly lawful, isn't it? I think the Lee case is not the facts are distinguished. I don't think it was simply Falun Gong. I don't recall. I think it was that one-child policy. In any event, in our case, the judge repeatedly incorrectly stated that the previous court had held that the petitioner was not a bona fide Falun Gong practitioner. And that's why I think the decision was tainted. In fact, at one point during the testimony, this is Administrative Record 279. She says to the counselor, are you trying to persuade me that he's a genuine Falun Gong member? And the counselor responds, yes. Then the judge says, and this is, again, AR 279, I'm bound by Ninth Circuit credibility finding that he's not. Well, this court didn't find that he was not. Again, that raises the question of the adverse credibility that existed. Where did it begin and where did it end? I think the thing about Lee, I don't think it implicitly overruled Camalthus. And so the thing about Lee is that it was the court found that the petitioner was not credible as to one claim for asylum and exported that credibility determination to another theory for asylum. So it was all the asylum claim. And the Ninth Circuit did not say you could export the adverse credibility finding into the CAT analysis because there are two different standards. CAT involves a different consideration, and that's why you have the decision from us that you have, which is upholding the adverse credibility and the denial of the claims for asylum withholding, but the remand for determination of the country conditions, which you could disbelieve the petitioner, but the country conditions are what the State Department describes them in the country report. So you could consider that this person was going to be more likely than not tortured for purposes of analyzing the CAT claim and still believe that this person isn't necessarily credible. Right, but my point is what... Your point is not distinguishing Lee. I mean, your point doesn't make a... I mean, if your point, if you were to carry it further, you're going to lose this case because you would be saying that, yeah, Lee applies to this situation, which would mean it had implicitly overruled Camalthus. Is that how you interpret it, that it overrules Camalthus? No, but I am pointing out that, again, if there's no purpose to be served in remanding the case for country conditions, what difference do country conditions make? They show that Falun Gong practitioners are subjected to all kinds of atrocities, but if one doesn't believe the petitioner is a bona fide Falun Gong practitioner, what difference do those country conditions make? Well, the strange thing about this thing, this case, is that you could believe that he was a bona fide Falun Gong practitioner but perhaps not believe that he would... It's more likely than not that he would be tortured upon removal to the People's Republic of China because there's evidence in the record that maybe China doesn't... And I'm doing this for sake of argument because I haven't concluded necessarily anything on this, but you could believe that country conditions in China are such that China no longer persecutes Falun Gong followers. Well, I think that the country conditions show the contrary. The country conditions show that Falun Gong practitioners are subject to all kinds of unspeakable atrocities. But what does he put in the record about that he would be tortured if removed to China? Doesn't it have to be more than some people are? I mean, it seems he did put... There's a UN report that two-thirds of alleged torture victims in China are Falun Gong members. You put that in evidence, right? Right. But what about him specifically? Well, he had, in the second remanded hearing, there was pictures of him practicing Falun Gong, and he had declarations of students. He also testified that he taught Falun Gong, and he had students write him letters and declarations indicating that Petitioner Yongqi Kuan was his teacher. And then there was substantial reports in the record. Would you agree, counsel, that if there is... if your client has not proven that he's a member of Falun Gong, that the country report is irrelevant with regard to... Yes. Okay, so you do agree with that. That's what I'm saying, yes. And I agree with you. It is irrelevant if he's not Falun Gong. So in this case, you've got two IJs who have independently determined that he's not. In the second case, I gather he was counseled by some, perhaps you, and he had the picture at a distance. Good, I'm glad. At a distance, can't even tell really who it is or what they're doing, and certainly not close enough for instruction. You also have a website that was supposed to be the basis for attracting students, but his name wasn't there. And his answer to that was, well, are my pictures there? Well, how do you tell anything there? Bottom line is, although Lee clearly does not overrule any of our other cases, it simply says that the implication of dishonesty in testimony, in whatever part of the case, can be taken into account when an IJ is ruling. False in one, false in all. That's the concept. And in this case, the IJ made a determination that your client was not a bona fide member of Falun Gong, in which case, you agree, the country conditions are irrelevant. But the first Judge Reichenberg didn't make that determination. The second one did, though. Actually, the second one said, I'm required to make this determination. That's what she did. And again, I have her decision in front of me. This is AR-42. The country reports in International Witness Freedom Reports also discuss other aspects of human rights violations in China. However, the Respondent's adverse credibility finding that he's not a bona fide Falun Gong practitioner was upheld already at the Ninth Circuit. It was not. And so that's why the second hearing was tainted. She assumed that she was bound by a prior adverse credibility finding that included the determination that he was not a bona fide Falun Gong practitioner. Yeah. I don't read it the same way you do, but that's the way it goes. All right. You're over your time on that. Thank you. May it please the Court. My name is Walter Bopini for the Attorney General. Your Honor, I think the most sensible reading of the Court's 2005 decision is that it remanded for application of the rule in the comaltas. That is essentially a pro forma rule that requires the agency to be explicit and engage the additional evidence submitted for purposes of torture prevention claim with precision. And unfortunately, that wasn't done the first time around. Was it really done the second time around? I think that, yes, Your Honor, both the immigration judge Stancil and the board considered the testimony, found it to be not credible. And then also considered the documents in the record. So are you with like an AUSA or are you with oil? I'm with oil, Your Honor. You're with oil. So good. So I want to ask you something. How is your department reading Lee? Is it reading Lee to overrule comaltas, to separately, to not require the IJ or the BIA to separately consider the CAC claim without regard to what, you know, the asylum and withholding? I don't believe so, Your Honor. That's certainly not my reading of Lee. I don't understand that to be the reading of the colleagues that I've discussed it with. So you can't just import the adverse credibility finding on the asylum and withholding and make that as the basis of your decision in CAT, right? No, you can't simply import it without going a step further and engaging the additional evidence, the additional evidence that is submitted with respect to CAT and explaining why it is or is not relevant. And I think that happened here. Okay. So you think the second IJ did an adequate CAT analysis. So the argument by your opposing counsel is that she was necessarily prevented from doing that because she was tainted by this belief that she was required to make an adverse, you know, view the testimony of Quan as lacking credibility. So what do you think about that argument? I don't think that that's how the decision should be read. She explicitly said that the prior adverse credibility finding weighed against, those were his words, her determination that he's a bona fide Falun Gong practitioner. She also explicitly said that it was the new inconsistencies that she identified in the remanded proceedings in combination with, again, her words, with the prior adverse credibility finding that undermined his claim that he is a bona fide Falun Gong practitioner. Okay. So then here's what I'm puzzled about. Our prior mem dispo upheld the adverse credibility but still remanded for CAT. So should she have, do you think she made an independent finding of adverse credibility? Or do you think she just viewed it as substantial evidence didn't support the conclusion that, or that the evidence in front of her supported the conclusion that he wasn't in fact a Falun Gong? I think she took into consideration the prior adverse credibility finding and with the new inconsistency made a new adverse credibility finding that included the rejection of his testimony that he's a bona fide Falun Gong practitioner. I'd like to ask you one question following up on Judge Wardlaw's question. I'm quoting here now from page, Bate Stamp 41. I guess that administrative record. This is the IJ's decision. She said, and I quote, however, referring back to the Ninth Circuit decision, noting that the adverse credibility finding does not necessarily preclude relief under the Convention Against Torture. And noting as well that the immigration judge did not address the country condition reports or other evidence of flagrant violations of human rights against Falun Gong practitioners. The court remanded the case for full consideration of the CAT claim. That's what the IJ, second IJ said. So is it fair to say, at least based upon what's said there, that the IJ was certainly aware that it had been remanded to consider the case under CAT and to make an independent determination under that regard? Absolutely, Your Honor. I think that's her pointing out that she understands what the boundaries of the decision is. What is this court's instructions in applying that in her decision? I think that the prior adverse credibility finding was a consideration, but in no way does her decision reflect that she was bound. And I would also point out she did use that term at one point during the hearing. That hearing occurred two months before she issued her decision. She took the decision into consideration and then issued the decision two months later. It didn't have that kind of language. It reflects that she considered the new inconsistencies that she identified plus the prior adverse credibility finding. Let me ask you another question. If we were to conclude that substantial evidence compels the finding that Quan is a Falun Gong practitioner, hypothetically, if we were going to do that, what would the proper course of action be? Would we have to remand under Ventura or could we further examine the record to make our own determination about whether or not it's more likely that he would be tortured if he were returned to China? I think the proper course under the Supreme Court law is then to remand again for the AGC to follow up on the claim from that point forth. Without those explicit instructions by the court on whether or not he's a bona fide Falun Gong practitioner. But obviously that's not our position now. He has never established that. Not the first time around when immigration judge Reichenberg. You know, it's just, I don't know. It just seemed to me that those photos, if you look at them carefully, they show him doing all the Falun Gong, the five Falun Gong positions. He testified about, you know, what it means, how you do it. I mean, I'm kind of persuaded that he is Falun Gong based on the evidence in this record. Did he say that his attorney told him to do that? Yes, Your Honor. Yeah. Although he presented all this testimony. He changed his mind later on, right? There was inconsistent testimony with respect to the purpose for the photos and the purpose for the website. So I think that undermined all of his testimony that whether or not he is, he may very well have been practicing Falun Gong in the sense that he's getting prepared for his hearing. But he's not a bona fide Falun Gong practitioner. And that was the determination. Did he ever take an inconsistent position as to whether he was Falun Gong? Not specifically whether he was Falun Gong. But the inconsistencies that the immigration judge identified are sufficient for her to support the adverse credibility claim. Especially in light of the prior adverse credibility finding, essentially the determination that he's not a believable witness. So when you take the new inconsistencies with the prior determination that he's not a believable witness with respect to his asylum and withholding claim, that is substantial enough to support the adverse credibility finding. I'm interested in the government's position on the following. This is outside the record, but it's a matter of common knowledge that the Republic of China will not take back people that we determine should be removed who are Falun Gong. And any number of other people. Number one, if that's true, what role, if any, should that play in our determination? It should play no role. I don't believe that that is true, beginning from the first part. People are removed to China. Obviously, it does require the cooperation of the Chinese government. Yeah, I was just wondering, practically, how are they being removed? Because I have the same understanding as Judge Smith. Yeah, Your Honor. I will definitely agree that. Sometimes we wonder if we do a lot of work for nothing. Exactly. Exactly. Well, Your Honor, this is the way. I mean, hurry up, hurry up, hurry up, and then nothing happens. Yeah, unfortunately, we are dependent on other governments to issue the necessary documents. But what happens if they won't take them back? From my understanding is that they remain here in a sort of deferred action position. But what do we do as a government? I don't think that that's a consideration of the court. No, no, I know it's not. I just want to know. Like, do they just stay here with this order and nothing ever happens? Well, on one hand, they continue to accrue equities one way or the other. So at some point they might be able to apply for cancellation again? No, they would eventually have to find a way to reopen proceedings. If the pen and the phone change immigration, so in terms of that there might be new executive orders that allow people to stay, right? Yeah, but this is all totally speculation. What could or could not happen? In the meantime, the government does what it can, but with the understanding, of course, that it's not all dependent on our government. We do require the help from other governments to issue the necessary documents. All right. Anyone have any more questions? Thank you. Thank you very much. Thank you, Your Honor. I'll give you a minute, even though you're over your time, to rebut. My understanding is Vietnamese nationals were not repatriated. I don't know about nationals from China. That's one of my last points. I think in these matters it's important to err on the side of caution. I think we have to err on the side of the law. I understand. It was kind of I remember an oath on that. Right. At the same time, you can be mindful that if the wrong decision is upheld and a petitioner is actually a fallen gun practitioner. But we actually do think that. I think it would be. I've never sat with a judge that didn't really think about the consequences of what they decide. I understand. Again, I would urge the panel to find in favor of the petitioner because a close reading of this administrative record indicates that the prior ruling of this court was not fully respected. Thank you. Thank you. Thank you very much, counsel. Kwan versus Helder will be submitted. We've already submitted United States versus Cowles. And we'll take up New Science Corporation versus Henkel.
judges: WARDLAW, CALLAHAN, SMITH